Brown and others, Trustees, Respondents, vs. Loewenbach and others, Executors, Appellants.

*December 4, 1934—March 5, 1935.*

For the appellants there was a brief by *McGovern, Curtis & Devos* of Milwaukee, and oral argument by *Francis E. McGovern.*

For the respondents there was a brief by *Upham, Black, Russell & Richardson,* attorneys, and *Perry J. Stearns* and *George H. Seefeld* of counsel, all of Milwaukee, and oral argument by *Mr. Seefeld.*

The following opinion was filed January 8, 1935:

FRITZ, J. This appeal by the defendants, from an order sustaining a demurrer to their answer, involves the sufficiency as a defense of facts alleged in answer to a complaint in an action to foreclose a mortgage on real estate. The defense is based on two distinct grounds, and such facts as are essential to a consideration of those grounds will be stated in the course of this opinion. The plaintiffs, as trustees of the Isaac Stephenson trust, are the mortgagees under a mortgage, which was executed on June 20, 1925, by Hugo Loewenbach, who died testate in 1931, leaving an estate, which the defendants have been appointed to administer in various representative capacities. The mortgage debt of $26,000 was due June 20, 1930, and on October 11, 1930, the time for payment was extended to June 20, 1935. The mortgagor covenanted to pay all taxes, and that, if he failed to perform all covenants and continued in default for sixty days, the entire mortgage debt should, at the option of the mortgagees, be deemed to have become due. The mortgagor and the defendants, as representatives of his estate, failed to pay the taxes for the years 1930, 1931, and 1932, so that over $26,000 have become past due for taxes, and because of that

default the plaintiffs declared the principal sum due also, and seek foreclosure of the mortgage.

The first ground of defense relied upon by the defendants is that it was not the defendants', but rather the plaintiffs', duty to pay the delinquent taxes for 1930, 1931, and 1932, as well as all subsequent taxes. In support of that ground the defendants alleged that on August 13, 1917, Hugo Loewenbach leased his premises for ninety-five years to Messrs. Olinger and Landeck, at an annual rental, which included the lessees' covenant to pay all taxes; that Olinger and Landeck also leased adjacent premises from the plaintiffs and erected one building on both tracts with the proceeds of a mortgage, which they gave on both of their leasehold interests; that the latter mortgage was foreclosed in 1931 because of defaults thereunder, and, on April 24, 1933, that leasehold interest was sold at a foreclosure sale, and a sheriff's deed was delivered to Shasta Realty Company, a corporation; that that corporation was caused to be organized by the plaintiffs for the express purpose of purchasing those leasehold interests at that sale, and was the creation and agent of the plaintiffs in that transaction, and that, while it pretended to act in its individual capacity, it was at all times in reality acting for the plaintiffs, at their directions and for their benefit; that, by the purchase of the lessees' interests under those two leases, the Shasta Realty Company and the plaintiffs became liable for the payment of all accrued and unpaid ground rent and future ground rent on the Loewenbach lease, including all accrued and past-due taxes, as well as future taxes, and that that corporation and the plaintiffs are still liable therefor; that, as the only default on the part of the defendants under the mortgage sought to be foreclosed, was the non-payment of those taxes, and as those taxes were, since the foreclosure sale of those leasehold interests, payable by the Shasta Realty Company and its principal, the plaintiffs herein have no right to foreclose said mortgage, and are estopped by the facts

alleged from asserting, or attempting to assert, any such claimed right.

The defendants contend that the facts thus alleged constitute a sufficient defense, on the ground that, as the lessees' interest in the property was purchased by plaintiffs under a lease which expressly made it the duty of the lessees to pay all taxes on the premises, it became the duty of plaintiffs, as assignees of the leasehold interest, and not of the defendants, to pay the delinquent taxes, and also other taxes which followed. In considering that defense, it must also be noted that, in the complaint made by the plaintiffs, after this action was commenced on October 19, 1933, they alleged that the Shasta Realty Company had conveyed the leasehold interest to some of the defendants, as executors of Hugo Loewenbach's will; that the defendants have not denied that allegation in their answer; but that, on the contrary, they allege that they have recently obtained new tenants in said building and are in receipt of accrued rentals, and will be able to continue to pay enough of said outstanding taxes to prevent the issuance of a tax deed. In view of those allegations, it is manifest that the Shasta Realty Company held that leasehold interest only from April 24, 1933, to some time prior to October 19, 1933, and that it had no interest therein in 1930, 1931, or 1932, when the delinquent taxes, the non-payment of which constitutes the basis for declaring the defendants in default, became due.

Under those facts and circumstances, the Shasta Realty Company, as such assignee, was liable for all rents and other obligations, including taxes, which accrued during the period, commencing April 24, 1933, and expiring some time prior to October 19, 1933, that the leasehold interest vested in that corporation. However, its obligation in that respect did not include any liability on its part to pay the taxes for 1930, 1931, and 1932, which had accrued prior to the time that it became the assignee of the leasehold. Its liability, as such

assignee, for a payment to be made as part of the rent, under a covenant running with the land, arises solely out of privity of estate, because, in the case at bar, there existed no privity of contract between that corporation and the lessors. *Cross and Shepardson v. Button,* 5 Wis. 600, 604; *Lincoln Fireproof Warehouse Co. v. Greusel,* 199 Wis. 428, 433, 224 N. W. 98, 227 N. W. 6. Under those circumstances, the assignee of the leasehold interest can be held by the lessor only for the payment of such rental charges as accrued during the period while that privity of estate existed under the covenant running with the land. Consequently, on the one hand, the assignee could relieve itself of the obligation to pay rent accruing in the future by terminating that privity of estate either by a surrender of the premises, or by an assignment of the leasehold interest to the lessor, the lessee, or a third party, *Lincoln Fireproof Warehouse Co. v. Greusel, supra; Mann v. Ferdinand Munch Brewery,* 225 N. Y. 189, 121 N. E. 746; and, on the other hand, in the absence of an agreement to the contrary, the assignee is not liable for breach of any covenant running with the land,—including a covenant for the payment of rental charges,—which had accrued prior to the assignment to the assignee. 7 R. C. L. p. 1124, § 38; 16 R. C. L. p. 118, § 84; p. 861, § 363; 35 C. J. p. 997; 36 C. J. p. 375, § 1231; 1 Tiffany, Landlord and Tenant, p. 971, § 158 (2) (c); p. 1128, § 181; *Walton v. Stafford,* 162 N. Y. 558, 57 N. E. 92; *Cohen v. Todd,* 130 Minn. 227, 153 N. W. 531; *Thomas v. Connell,* 5 Pa. 13; *Negley v. Morgan,* 46 Pa. 281; *Bartlett v. Amberg,* 92 Ill. App. 377; id. 190 Ill. 15, 60 N. E. 84.

In connection with authorities cited by appellants, they rely also on sec. 234.09, Stats., which, so far as here material, provides that—

"Every person in possession of land out of which any rent is due, whether it was originally demised in fee or for any other estate or freehold, or for any term of years, shall be

liable for the amount or proportion of rent due from the land in his possession although it be only a part of what was originally demised. . . ."

Similar provisions are in sec. 4, ch. 186, General Laws, 1932, of Massachusetts, and in sec. 13489, Compiled Laws, 1929, of Michigan, but it does not appear that it was intended by those provisions to change the common-law rule, under which, in the absence of an agreement to the contrary, an assignee of a lease is not liable under a covenant running with the land for rent which had accrued prior to his entering into possession. As the statute does not clearly indicate the intention to abrogate that common-law rule, by subjecting the assignee of a leasehold to additional liability not recognized at common law, it should be strictly construed in that respect, instead of being given a meaning by construction which would be in derogation of the common law. As this court said in *Sullivan v. School District*, 179 Wis. 502, 506, 191 N. W. 1020,—

". . . it is not to be presumed that the legislature intended to abrogate or modify the rule of the common law by the enactment of a statute upon the same subject; it is rather to be presumed that no change in the common law was intended, unless the language employed clearly indicates such an intention."

The purpose of the statute rather seems to be to subject every person in possession of all or a part of land originally demised, out of which any rent is due, to liability for the amount or proportion of rent accruing under a lease, while he is in possession, for such part of the land as is in his possession, even though he did not expressly assume, as an assignee of the leasehold interest, or otherwise, to pay rent at the rate or on the basis of the rate specified in the lease.

The second ground relied on by the defendants as a defense is that the plaintiffs are estopped from maintaining this foreclosure action during the continuance of the present economic

depression, in view of the facts stated above and the following additional facts, to wit: That plaintiffs agreed to cooperate with the defendants and forbear foreclosure proceedings for a breach of the mortgage by the failure to pay taxes, if the defendants would pay, out of the income of the premises, such portions of the unpaid taxes as would form the basis for an application for a tax deed; that, relying on that agreement, the defendants have caused to be paid from time to time on those outstanding taxes enough thereof to prevent the issuance of a tax deed; that the defendants will be able to continue to pay enough of those outstanding taxes to prevent the issuance of such a deed, and to pay the larger part of those taxes within the next two years; that, in reliance on that agreement of plaintiffs to co-operate with the defendants, and to forbear foreclosure of their said mortgage, the defendants have not sought a new loan on the property, and their condition has materially changed from that which it would have been, except for their reliance upon plaintiffs' promises; and that, if plaintiffs are permitted to proceed with the foreclosure of the mortgage, the defendants' rights will be seriously prejudiced, and they will sustain irreparable harm and injury.

Those alleged promises and agreements, and the other facts stated in defendants' answers, do not warrant the conclusion that the plaintiffs are estopped from instituting and maintaining this action. There is no allegation that there was any misrepresentation or concealment by plaintiffs of any past or then existing fact upon which any reliance was placed by the defendants, on account of which they acted or changed their position to their disadvantage, and of which the defendants did not have full knowledge. In the final analysis, the basis for the alleged estoppel is an alleged promise or agreement on the part of the plaintiffs to co-operate with defendants, and to forbear foreclosure proceedings during the continuance of the depression. At best, the alleged promise or agreement

constituted merely a representation in respect to proposed future conduct of a promisor, as to which the doctrine of estoppel is not applicable. *Martin v. Fox & Wis. Imp. Co.* 19 Wis. * 552, * 559; *Starry v. Korab,* 65 Iowa, 267, 21 N. W. 600; *Allen v. Hodge,* 51 Vt. 392, 395; *Langdon v. Doud,* 10 Allen (92 Mass.), 433, 436; *Jackson v. Allen,* 120 Mass. 64, 79; *Weidemann v. Springfield Breweries Co.* 78 Conn. 660, 664; *Shapley v. Abbott,* 42 N. Y. 448, 449, 457, 1 Am. Rep. 548; *Troy v. Rogers,* 113 Ala. 131, 146, 20 So. 999; *Union Mut. Life Ins. Co. v. Mowry,* 96 U. S. 544, 547, 24 L. Ed. 674. On the other hand, as promises or representations as to proposed future conduct, they were not legally binding as a contractual obligation because there was no consideration for them. Prior to the time that they are alleged to have been made, the defendants had become obligated, by virtue of the mortgage held by plaintiffs, to pay all taxes on the premises, and the defendants did not, in connection with the alleged promises or representations of the plaintiffs, undertake to do anything more than to pay those taxes. Consequently, the alleged promise not to foreclose was without consideration, and therefore was void and unenforceable. *Strehlow v. Planinger,* 198 Wis. 525, 224 N. W. 742; *Haase v. Blank,* 177 Wis. 17, 187 N. W. 669; *Fanning v. Murphy,* 126 Wis. 538, 105 N. W. 1056.

Defendants also contend that, as the plaintiffs had a lien on the premises by virtue of their mortgage, and subsequently acquired, as assignees of the lessees, the latter's leasehold estate in the same premises, the doctrine of merger is applicable; and that, under that doctrine, the lesser estate, which defendants claim was the mere lien of the mortgagees, became absorbed by the greater estate, which defendants claim was the leasehold. Appellants recognize, in that connection, that a merger does not take place unless that was the intention of the person in whom the two estates became vested, and that

that question of intent is an issue of fact that must be proven on the trial, but defendants contend that merger need not be pleaded, and that advantage of its consequences may be taken on the appearance of appropriate facts either on the pleadings· or in the evidence on the trial. In respect to that contention, it suffices to note that the facts which are alleged negative the existence of any intention on the part of the plaintiffs that there was to be a merger. The plaintiffs, as the trustees of the Isaac Stephenson's trust, and the Shasta Realty Company, are separate and distinct entities. Even though that corporation was, as is alleged in the answer, the creation or agent of the plaintiffs, and was acting for them at their direction and for their benefit, while pretending to act in its individual capacity, those facts do not warrant the inference that the plaintiffs intended to consider the mortgage lien and the leasehold estate merged. On the contrary, if, as defendants allege, that corporation was organized by plaintiffs as a separate entity for the express purpose of purchasing the lessees' interest, and that purchase and the assignment of that interest were made at plaintiffs' direction, in the name of that corporation, instead of being made in their names, as the trustees, so that the plaintiffs thereby intentionally actually prevented the two interests or estates from vesting in the same entity, those facts convincingly indicate that it was the plaintiffs' intention to keep the mortgage lien and the leasehold estate separate and distinct, so that those two interests or estates would not actually vest in the same person. Under those circumstances there could not be a merger. *Thauer v. Smith,* 213 Wis. 91, 250 N. W. 842. But in addition, aside from the proposition that the facts alleged indicate that a merger was not intended, there could not be a merger, under the facts in this case, for the following reasons: Plaintiffs' interest, as mortgagees, was not an estate in fee, but was merely a lien to secure the mortgage indebtedness. The fee and the general ownership, including the estate in reversion, after the termi-

nation of the leasehold estate, was and continued to be vested in the defendants. Consequently, that estate in fee in the defendants was, at all times, an intervening estate between the leasehold estate and the plaintiffs' mortgage lien. Under those circumstances, there could be no merger of the leasehold estate and the mortgage lien. To effect a merger at law, the right previously held and the right subsequently acquired must coalesce in the same person, and in the same right, without any other right intervening. If there is any outstanding, intervening title, the foundation for a merger does not exist. Jones, Mortgages (8th ed.), § 1080; Tiffany, Real Property (2d ed.), p. 91; *Stantons v. Thompson,* 49 N. H. 272; *Lime Rock Nat. Bank v. Mowry,* 66 N. H. 598, 22 Atl. 555, 13 L. R. A. 294; *Hunt v. Hunt,* 14 Pick. (Mass.) 374, 384, 25 Am. Dec. 400; *Cheffee v. Geageah,* 253 Mass. 586, 149 N. E. 620; *Kanawha Valley Bank v. Wilson,* 29 W. Va. 645, 2 S. E. 768, 772; *Dutton v. Ives,* 5 Mich. 515, 520; *Washington Furniture Co. v. Potter,* 188 N. C. 145, 124 S. E. 122; *Cox v. Ledward,* 124 Pa. 435, 16 Atl. 826; *Boatright v. Fennell,* 213 Ala. 10, 104 So. 1; *Chase Nat. Bank v. Security Sav. Bank,* 28 Wash. 150, 68 Pac. 454.

*By the Court.*—Order affirmed.

A motion for a rehearing was denied, with $25 costs, on March 5, 1935.